UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HECTOR RODRIGUEZ,

                Petitioner,

        -against-

LOUIS MARSHALL,
SUPERINTENDENT OF SING SING
CORRECTIONAL FACILITY,

                Respondent.
-----------------------------------------------------X
FEUERSTEIN, J.

**OPINION & ORDER**
07-CV-1328

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 29 2011 ★

LONG ISLAND OFFICE

On March 22, 2007, *pro se* petitioner Hector Rodriguez ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of second degree murder on March 4, 2002. On August 31, 2010, Petitioner filed an application to stay the proceeding pending an opportunity to exhaust all claims. For the reasons set forth below, the motion to stay is denied and the petition is denied.

I.     Background

    A.     Petitioner's Trial

On August 5, 2001, Petitioner was arrested for the murder of Eric Figueroa ("Figueroa"). Trial Transcript ("Trial Tr.") at 223-24. At Petitioner's trial, the prosecution called ten (10) witnesses, including five (5) police officers, a medical examiner, and three (3) witnesses who

1

were near or at the shooting. See Affidavit in Opposition at 3.

Joseph Alvarez ("Alvarez"), Eric Rivera ("Rivera"), and Victor Nieves ("Nieves") each testified that they saw Petitioner in a courtyard in the Fort Greene section of Brooklyn the night of the murder. Trial Tr. at 147, 376, 421. Alvarez and Nieves testified that they saw Petitioner hold a gun to Figueroa's head, fire a single shot, and flee. Id. at 151-153, 421-425. During cross-examination, Nieves testified that he, Figueroa, and others had mocked Petitioner for wearing a red handkerchief on his face. Id. at 445-447. Nieves testified that he and his friends joked about the handkerchief because Petitioner claimed to be a member of one street gang, the "Latin Kings," although red is the color of another gang, the "Bloods." Id.

The prosecution seized Rivera pursuant to a material witness order at six thirty in the morning (6:30 a.m.) on February 28, 2002. Id. at 464. After consulting with his lawyer, Rivera agreed to testify without an attorney being present. Id. at 353. Rivera testified that he heard a shot from a lobby adjacent to the courtyard. Id. at 376.

Detective John Roman testified that he prepared a "wanted card"[1] for Petitioner and subsequently arrested him after interviewing Alvarez, Nieves, and Rivera. Id. at 213, 220-21. Detective Robert Sielaw testified that Petitioner received his "Miranda" warnings, waived the corresponding rights, and during questioning became "uncooperative" and "had no explanation" as to why several people identified him as the shooter. Id. at 317-24. Petitioner told Sielaw, "[j]ust take me down to central booking." Id. at 324. Defense counsel did not object to the

---

[1]Detective Roman testified that a "wanted card" allows police to track the names, last known addresses, and suspected involvement of anyone "the police are looking for." Trial Tr. at 221. "[I]n case the police stop them in the street and they run their names, it comes up that they are a wanted person." Id.

2

detectives' testimony or call any witnesses.

Although defense counsel moved to suppress evidence that Petitioner and Figueroa "used to steal cars together" before trial, the motion was denied, and defense counsel did not object to this testimony at trial. Proceedings, January 7, 2002; Trial Tr. at 323.

During summation, defense counsel challenged Nieves's credibility and suggested that his testimony indicated that Nieves had lied under oath because Petitioner would not have worn the red handkerchief. Id. at 502-03. Defense counsel argued that Alvarez and Nieves were motivated to "get together to put a story out" because each was on parole, id. at 501-03, "had something to hide" because their activities in the courtyard at the time of the shooting violated the conditions of their release, id. at 510, and their testimony was contradicted by Rivera, who was not on parole. Id.

On March 4, 2002, Petitioner was convicted of murder in the second degree, N.Y. Penal Law § 125.25(1) (McKinney). On April 16, 2002, the trial judge sentenced Petitioner to a term of twenty-five (25) years to life in prison. Sentencing Transcript at 6.

B. Post-Sentence Background

On July 12, 2005, Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. See Defendant-Appellant Certificate of Compliance. Petitioner argued that: his constitutional right to a fair trial had been denied when the prosecutor elicited evidence that suggested Detective Roman decided to treat Petitioner as a suspect and prepare a "wanted card" for Petitioner based upon the out-of-court testimony of Rivera, Alvarez, and Nieves, Defendant-Appellant's Brief ("Appellant Brief") at 21; his right to a fair trial had

3

also been denied when the prosecution seized and allegedly intimidated Rivera, id. at 43; and the prosecution violated his constitutional right to silence by introducing evidence that he became "uncooperative" after he allegedly invoked his "Miranda" rights, id. at 25. Petitioner also sought to vacate the judgment on the basis of ineffective assistance of counsel. Id. at 31.

On June 13, 2006, the Appellate Division summarily rejected Petitioner's ineffective assistance of counsel claim and held that Petitioner's remaining claims were "unpreserved for appellate review." People v. Rodriguez, 30 A.D.3d 544, 816 N.Y.S.2d 360 (N.Y. App. Div. 2006). On August 21, 2006, the New York State Court of Appeals denied Petitioner leave to appeal. People v. Rodriguez, 7 N.Y.3d 817, 855 N.E.2d 808, 822 N.Y.S.2d 492 (2006).

On March 22, 2007, Petitioner filed this petition, raising identical claims to those brought before the state courts. Petition at 4–7. On May 11, 2007, Petitioner moved for a stay and abeyance of proceedings in order to exhaust possible remaining claims. This Court granted his motion on June 6, 2007. On March 11, 2009, the Court removed the stay and ordered respondent to show cause why the writ should not be granted. Respondent filed a response to the order to show cause on May 11, 2009. Petitioner filed his traverse on June 12, 2009.

On August 31, 2010, Petitioner moved to stay proceedings a second time. Motion to Stay at 1-5. In that motion, Petitioner indicated a desire to "amend his habeas corpus petition to include an 'Innocent Claim.'" Id. at 5. On June 6, 2011, Petitioner has filed a supplemental motion in support of the second motion to stay. Supplementary Motion to Stay at 3.

II.  The AEDPA

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs applications of incarcerated state court defendants seeking federal habeas corpus relief.

A.  Exhaustion

The AEDPA requires that prior to bringing a petition for habeas corpus relief in federal court, a petitioner must "exhaust the remedies available in state court or demonstrate that 'there is an absence of available [s]tate corrective process [or that] circumstances exist that render such process ineffective to protect the rights of the [petitioner].'" Fama v. Comm'r of Corr. Services, 235 F.3d 804, 808 (2d Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)). To satisfy the exhaustion requirement, a petitioner must "fairly present" both the factual and legal premises of his federal claim to the highest state court. See Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); see also Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

Except for the "Innocent Claim," all of Petitioner's claims have been presented to the Appellate Division and the Court of Appeals of New York, and have been properly exhausted.

III.  Petitioner's Motion to Stay

Petitioner seeks a "stay and abeyance" to bring what he identifies as an "Innocent Claim" before a state court in a motion pursuant to N.Y. Crim. Proc. Law § 440, and indicated that he has not filed his motion in state court. Supplementary Motion to Stay at 3.

Courts must read the pleadings of *pro se* litigants liberally to suggest the party's strongest claim. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) (noting that filings by *pro se* parties are held to "less stringent standards than formal pleadings drafted by lawyers"). Although inartfully pleaded, Petitioner appears to be seeking a stay in order to file a state court motion to vacate his conviction upon the grounds of new evidence, pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g), so that he might later be able to amend his habeas petition to include a properly exhausted "actual innocence claim" if he fails in state court.

A district court should only grant a stay and abeyance in "limited circumstances" where the petitioner demonstrates "good cause for the petitioner's failure to exhaust his claims first in state court" and where the unexhausted claims are not "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005); see also Williams v. Bradt, No. 10-CV-3910, 2011 WL 531732, at *2 (E.D.N.Y. Feb. 8, 2011) (denying motion to stay where petitioner offered no good cause for a delay).

Petitioner has failed to demonstrate good cause for the delay in exhausting any outstanding claims. From June 6, 2007 through March 11, 2009, the Court held the proceedings in abeyance so that Petitioner could exhaust his claims. When the Court granted Petitioner's original motion to stay, it warned Petitioner in bold type that "Petitioner is cautioned that he may be barred from reopening his federal habeas petition on statute of limitation or other grounds if he delays in initiating collateral proceedings in state court . . . ." Order Staying Petition at 1. Petitioner was specifically told that the "Second Circuit has found that thirty (30) days is a reasonable period of time to . . . initiate state collateral proceedings." Id. (citing Zarvela v. Artuz, 254 F. 374, 380-81 (2d Cir. 2001)). More than four (4) years have elapsed since the Court issued

that order, and the 440.10(g) motion still has not been filed. Petitioner has offered no good cause for the delay in exhausting his "actual innocence claim" in state court, and his bare assertion that "he is innocent," Motion to Stay at 5, is not sufficient to support an "actual innocence claim." See Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L. Ed. 2d 808 (1995). Therefore, the motion to stay is denied.

Although a court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983), a claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits," Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); see also Townsend v. Sain, 372 U.S. 293, 317, 83 S. Ct. 745, 759, 9 L. Ed. 2d 770 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled on other grounds by* Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992). For example, a "colorable showing of factual innocence" will allow a federal court to entertain a constitutional claim in a successive petition for a writ of habeas corpus. See Kuhlmann v. Wilson, 477 U.S. 436, 454, 106 S. Ct. 2616, 2627, 91 L. Ed. 2d 364 (1986) ("[T]he 'ends of justice' require federal courts to entertain such petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence."). Denial of Petitioner's motion to stay or amend to include his "actual innocence claim" will not prejudice Petitioner.

Moreover, a habeas petition alleging "actual innocence" must provide "new reliable

evidence" of innocence "that was not presented" at trial; a petitioner's bare statement that he is innocent is insufficient. Schlup, 513 U.S. at 324, 115 S. Ct. at 865; see also Ortiz v. Heath, No. 10-CV-1492, 2011 WL 1331509, at *9 (E.D.N.Y. Apr. 6, 2011) ("These bare assertions plainly fail to introduce any required 'new evidence' and are therefore insufficient to meet the 'actual innocence' standard."). The new evidence must make it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327, 115 S. Ct. at 867. At this point, Petitioner has failed to present or adequately allege any new evidence that would allow him to meet this high standard. Therefore, insofar as Petitioner seeks a motion to amend his petition to include an "actual innocence claim," such motion is denied.

IV.   Petitioner's Claims

   A.   Ineffective Counsel

The Sixth Amendment provides, *inter alia*, that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must prove both that (1) counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 689, 694, 104 S. Ct. 2052, 2055, 80 L. Ed. 2d 674 (1984). A petitioner may rebut the presumption of adequate counsel only by demonstrating that "in light of all the circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance." Id. at 690. A "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome." Knowles v. Mirzayance, --- U.S.---, 129 S. Ct. 1411, 1422, 173 L. Ed. 2d 251 (2009), *reh'g denied*, ---U.S.---, 129 S. Ct. 2422, 173 L. Ed. 2d 1327 (2009).

When a petitioner's ineffective assistance of counsel claim has already been denied by a state court, a federal habeas court "must defer to the state court's rejection of the claim, and must deny the writ unless . . . the state-court adjudication (1) 'was contrary to,' or (2) 'involved an unreasonable application of,' clearly established federal law 'as determined by the Supreme Court of the United States.'" Henry v. Poole, 409 F.3d 48, 67-68 (2d Cir. 2005) (citations omitted); see also Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010). A federal court may grant the writ only if a state court arrived at conclusion that was "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to Supreme Court precedent, where the Supreme Court ruled on "a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405-406, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000). A federal court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S. Ct. at 1523. The "unreasonable" standard is "a substantially higher threshold" than determining the state court was incorrect, Knowles, 129 S. Ct. at 1420, and "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists,'" Henry, 409 F.3d at 68 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court

to deny relief." Harrington v. Richter, ---U.S.---, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011).

Petitioner's claim is based upon failure to object to evidence and a decision to elicit certain other evidence.

### 1. Failure to Object

Where a petitioner's claim rests in part upon counsel's failure to object to the admission of evidence, "it is necessary to determine whether the evidence was so damaging that counsel's failure to object deprived petitioner of the 'reasonably effective assistance' to which he is entitled." Quartararo v. Fogg, 679 F. Supp. 212, 240 (E.D.N.Y. 1988) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. at 2064), *aff'd*, 849 F.2d 1467 (2d Cir. 1988). Defense counsel's strategy decisions generally do not constitute ineffective counsel, even if they "open the door" to damaging evidence. See Cuevas v. Henderson, 801 F.2d 586 (2d Cir. 1986). The Second Circuit has repeatedly declined to deem counsel ineffective "notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996) (collecting cases).

Petitioner challenges counsel's failure to object to evidence that Petitioner became "uncooperative" after allegedly invoking his constitutional right to silence. Petition at 5. The prosecution introduced evidence that supports Petitioner's waiver of his right to remain silent. Trial Tr. at 318. During summation, counsel utilized the testimony by arguing that the behavior was indicative of Petitioner's innocence. Trial Tr. at 507-08. Similarly, the decision not to object to Detective Roman's testimony that Petitioner became a suspect after the detective interviewed the witnesses buttressed defense counsel's claim that the witnesses might have created a "story" to frame Petitioner. Id. at 503. A state court reasonably could have held that

10

defense counsel's lack of objection and subsequent argument was a strategic decision that fell within the "wide range" of options counsel may employ under Strickland.

The Appellate Division's decision regarding defense counsel's strategy not to object to evidence that Petitioner admitted that he and Figueroa "used to steal cars together" is not an unreasonable application of the Strickland standard. A state court reasonably could have held that counsel's failure to object to the evidence did not reach a level that rendered counsel's assistance ineffective. See United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991) ("[G]iven the plethora of evidence against [defendant], there is little reason to believe that alternative counsel would have fared any better."); see also Jelinek v. Costello, 247 F. Supp. 2d 212, 283 (E.D.N.Y. 2003) (failure to object to a police officer's suggestion of out-of-court witness statements was not ineffective assistance because "failure to object to this type of hearsay is not an unusual mistake for an attorney").

Although the state court did not specify the grounds on which it denied Petitioner's ineffective assistance claims regarding counsel's failure to object, Petitioner has failed to demonstrate that the state court had no reasonable basis to deny relief. It would be neither "contrary to" nor "an unreasonable application of" Supreme Court precedent, 28 U.S.C. § 2254(d)(1), to find that counsel's strategic decision not to object to certain evidence in this case fell within the "wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S. Ct. at 2055. Therefore, insofar as Petitioner contends that his attorney provided ineffective assistance of counsel by failing to object to evidence and statements at trial, the petition is denied.

2. Evidence of a "Gang-Related Motive"

Petitioner contends that his attorney was ineffective by eliciting evidence of a gang-related motive. A major part of the defense was based upon the argument that a third or unidentified person shot Figueroa. See Trial Tr. at 33, 60, 128, 510. Counsel used the testimony of Nieves to challenge the credibility of the other witnesses' "story" and argued that their testimony was fabricated to protect themselves. Id. at 503. Counsel argued that jurors should disbelieve Nieves' testimony because evidence of Petitioner wearing the red bandana "doesn't fit my client." Id. A state court reasonably could have found counsel's strategy to fall within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2055. Moreover, Petitioner has not demonstrated that the outcome would have been different but for his attorney's decision to elicit the evidence.

When considering all of Petitioner's claims cumulatively, Petitioner has failed to demonstrate that the state court decision was "contrary to" or an "unreasonable application of" Supreme Court precedent. Therefore, Petitioner's ineffective assistance of counsel claim is denied.

B. Petitioner's Procedurally Barred Claims

Federal review of a state court decision upon a habeas corpus petition is barred "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Beard v. Kindler, ---U.S.---, 130 S. Ct. 612, 614, 175 L. Ed. 2d 417 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). A state rule that is "firmly established and regularly followed" can foreclose

review of a federal claim. Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002) (citing James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984)). New York's contemporaneous objection rule qualifies as an adequate and independent state-law ground on which to bar federal habeas review where a trial judge is not given a meaningful opportunity to rule on the issue in question. See Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999). A federal court will only review a decision made upon adequate state law grounds if the petitioner shows "cause for the default and prejudice therefrom." Kemna, 534 U.S. at 405, 122 S. Ct. at 900; see also Fama, 235 F.3d at 809.

The Appellate Division of New York State Supreme Court rejected Petitioner's remaining claims as "unpreserved for appellate review." Rodriguez, 30 A.D.3d at 544, 816 N.Y.S.2d at 360. Although Petitioner failed to object to the introduction of this evidence at his trial, he now argues that he was denied a fair trial when the prosecutor elicited the out-of-court statements of the three (3) witnesses, Appellant Brief at 21, the prosecution's evidence that Petitioner became "uncooperative" after he received his "Miranda" warnings, id. at 25, and the prosecution violated his right to a fair trial by an improper seizing of a witness and alleged witness intimidation. Id. at 43.

Petitioner bears the burden of showing the state court's application of the law lacked reasonable basis. Harrington, 131 S. Ct. at 784. New York's contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05 (McKinney 2009), establishes sufficient ground for denial of Petitioner's motion. Petitioner has not demonstrated prejudice from counsel's failure to object, and therefore these claims are procedurally barred.

13

C.  Certificate of Appealability

As Petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008); Kellogg v. Strack, 269 F.3d 100, 102 (2d Cir. 2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

V.  Conclusion

The petition for a writ of habeas corpus is hereby denied in its entirety and the proceeding is dismissed. A certificate of appealability will not issue. The Clerk of the Court is directed to service notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* Petitioner at his last known address. Fed. R. Civ. P. 5(b)(2)(C).

The Clerk of the Court is directed to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 29, 2011
Central Islip, New York